COSTA KERESTENZIS, SBN 186125
LORRIE E. BRADLEY, SBN 309411
**BEESON, TAYER & BODINE, APC**
483 Ninth Street, 2nd Floor
Oakland, CA  94607-4051
Telephone:  (510) 625-9700
Facsimile:  (510) 625-8275
Email:      ckerestenzis@beesontayer.com
            lbradley@beesontayer.com

Attorneys for Plaintiffs
JO ANN GUTIERREZ-BEJAR, MARIA
PORTILLO, and STEPHANY MAGAÑA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JO ANN GUTIERREZ-BEJAR, MARIA PORTILLO, and STEPHANY MAGAÑA, on behalf of themselves and all other similarly-situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>SOS INTERNATIONAL, LLC, and DOES 1-10,<br><br>Defendants. | Case No. 2:16-CV-09000 JAK (JEM)<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING FEDERAL CLAIMS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date:   January 14, 2019<br>Hearing Time:   8:30 a.m.<br>Courtroom:      10B<br>Judge:          Honorable John A. Kronstadt<br><br>Complaint Filed: December 5, 2016<br>Trial Date:      None set |

## I.    INTRODUCTION

Plaintiffs JO ANN GUTIERREZ-BEJAR, MARIA PORTILLO, and STEPHANY MAGAÑA (collectively "Plaintiffs") submit this further supplemental brief in support of their Motion for Preliminary Approval of the Class Action Settlement.  This brief is being submitted pursuant to the Court's January 28, 2019

1    Order to specifically address the federal (FLSA) claims that Plaintiffs seek to

2    preliminarily approve and particularly the range of potential damages for these claims

3    further demonstrating the reasonableness of the agreed upon Settlement amount.

4         In support of this brief, Plaintiffs will cite to prior declarations before the Court,

5    which will be identified as follows:  the declaration of Charles O' Brien, SOSI's senior

6    program manager, in support of Defendant's Opposition to Plaintiffs' Motion for

7    Conditional Certification of the federal (FLSA) claims (Dkt. 58-5) (hereinafter referred

8    to as "O'Brien Decl."), and the declaration of Costa Kerestenzis previously filed in

9    support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

10   (hereinafter referred to as "Kerestenzis Decl." (Dkt. 106-2, 3)).

11        Plaintiffs are also providing concurrently herewith the FLSA declaration of

12   Costa Kerestenzis (hereinafter referred to as "Kerestenzis FLSA Decl.") to specifically

13   set forth facts in this brief not previously before the Court.

14                        **II.    ARGUMENT**

15        Plaintiffs' Fair Labor Standards Act ("FLSA") Claims allege that, by

16   misclassifying Interpreters and not paying them for all hours worked, Defendant failed

17   to pay minimum wage and Defendant failed to pay owed overtime wages as required

18   by the FLSA.  In raising these Claims, Plaintiffs sought owed wages and liquidated

19   damages.  (First Amended Complaint at ¶¶94-111.)

20        As noted in Plaintiffs' initial papers, during discovery, a review of the

21   Certifications of Interpretation ("COIs"), which record the time Interpreters provided

22   services at hearing, and a review of the nationwide Class demographics revealed

23   several facts that significantly limited or extinguished any FLSA liability for much of

24   the Class as detailed below.  (Kerestenzis Decl. ¶32.)  As a result, in valuing the FLSA

25   Claims for settlement discussions, Plaintiffs gave little or no value to owed overtime

26   and minimum wage claims and initially valued SOSI's FLSA exposure at or around

27   $200,000, primarily based on potential liquidated damages due to the FLSA Class as a

28   / / /

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING FEDERAL CLAIMS IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
Case No. 2:16-CV-09000 JAK (JEM)

1    result of SOSI not paying Interpreters in a timely manner.  (Kerestenzis FLSA Decl.

2    ¶¶5-6.)

3          As noted in the First Amended Complaint (¶66), Plaintiffs alleged as part of

4    their FLSA Claims that SOSI failed to timely pay owed wages.  Specifically, in late

5    2015 and early 2016, after SOSI initially took over operations, SOSI delayed payment

6    to Interpreters in different locations nationwide for over 30 days.  (Kerestenzis FLSA

7    Decl. ¶7.)  Even though the Interpreters were eventually paid all monies owed, the

8    FLSA does allow for liquidated damages if an Employer fails to make timely payment.

9    *See Biggs v. Wilson*, 1 F.3d 1537, 1541 (9th Cir. 1993).  (Kerestenzis FLSA Decl. ¶7.)

10         Plaintiffs' initial valuation of $200,000 stemmed primarily from Plaintiffs'

11   estimate of SOSI's exposure for failing to make timely payments, with an additional

12   amount for the possible, yet difficult to prove, violations of owed overtime/minimum

13   wages.  (Kerestenzis FLSA Decl. ¶8.)  With regard to the timely payment exposure, as

14   the Court is aware, the nationwide Class for the Class period numbers around 1600.  At

15   the time of the late payment, approximately 800 Interpreters worked for SOSI and

16   were possibly affected.  Of that number, the majority of the Class worked fewer than

17   ten work orders, and many worked only one work order during this time.  During

18   discovery, Plaintiffs learned that the late payment issue was primarily limited to this

19   specific timeframe and did not happen with regularity afterwards, leading Plaintiffs to

20   conclude that many members of the Class had limited damages for late payment, if

21   any.  Further, based on the information obtained during discovery, proving who was

22   paid late would also be difficult, as no records existed as to the late payment.  Thus, for

23   Settlement purposes Plaintiffs estimated that SOSI faced potential exposure for

24   approximately 200-400 Interpreters for this late payment and estimated liquidated

25   damages at about $500 per Interpreter to come to an initial valuation for Settlement

26   purposes.  (Kerestenzis FLSA Decl. ¶9.)

27         Ultimately, given the inherent uncertainties of continued litigation and given the

28   damage and proof issues extensively discussed in Plaintiffs' initial papers, Plaintiffs

3

agreed to settle the FLSA claims for a total of $42,500, which is a fair, adequate and reasonable amount.  This is particularly true because, as noted in the initial papers, Defendant has agreed to pay this amount for the FLSA Claims regardless of the number of individuals who affirmatively opt in to the Settlement and the FLSA Settlement will be evenly distributed amongst those who affirmatively opt in.  As a result, each Interpreter who opts in will likely receive at least $100 (if 25% of the Class opts in) and likely more given our experiences with nationwide participation in this case, in the form of liquidated damages for possible late payment and owed payment claims with a minimum of $25 per individual if all 1,651 eligible Class members opt in.  (Kerestenzis FLSA Decl. ¶10.)

Simply, given that that there is very little evidence that Class members lost any pay under the FLSA as set forth herein, this amount is fair and adequate.

**A.**     **The Records Do Not Support Plaintiffs' FLSA Overtime Claim.**

As was briefed in Plaintiffs' Motion for Preliminary Approval (Dkt. 106), and Plaintiffs' Supplement to the Motion for Preliminary Approval (Dkt. 108), an analysis of the Class data and COIs shows that it would be extremely difficult to prove that any Interpreter would be entitled to overtime payments under the FLSA.

Immigration court hearings are scheduled for either morning or afternoon sessions.  As noted in Plaintiffs' earlier papers, a vast majority of the Interpreters nationwide do not provide services for SOSI on a daily basis because of the language they service and/or location.  (Kerestenzis Decl. ¶¶27-28; See also O'Brien Decl. ¶7.) Accordingly, a majority of Interpreters provide services to SOSI on an infrequent basis making any liability for overtime wages due after working over 40 hours a week impossible to prove and/or non-existent.

With that said, even if an Interpreter works every morning and afternoon session five days a week (which is highly unusual), it is unlikely that he or she would exceed 40 hours per week given regular court hours and lengths of the hearings.  The named Plaintiffs' records are a particularly good example of this as they (particularly Portillo

4

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING FEDERAL CLAIMS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
Case No. 2:16-CV-09000 JAK (JEM)

790734

and Magaña) had well above average work orders when comparted to the vast majority of the nationwide Class, because they were Spanish speaking Interpreters based out of Los Angeles.  An analysis of each Plaintiffs' COIs showed that neither Plaintiff worked "overtime," whether using the *average* hours per week or using the *maximum* hours worked in a week (e.g., Plaintiff Magaña's average hours per week totaled 10.48 hours and the most hours reflected on any COI was 16.08 maximum hours). (See generally O' Brien Decl. ¶¶19-25.)

Even assuming an argument that Interpreters had up to two unrecorded hours a day, the data still showed that there were no weeks, per the COIs, where Plaintiffs worked over 40 hours (e.g., adding two hours to Plaintiff Magaña's COIs brought her average hours per week to 17.91 hours and 26.08 maximum hours worked).  (*Id.*) Given this and given that a vast majority of Interpreters rarely worked 10 sessions per week, it would be extremely difficult to prove that the nationwide Class had any regular overtime violations.

**B.     Given the State of FLSA Law regarding Averaging, Proving Minimum Wage Violations would be Nearly Impossible.**

The "Klinghoffer rule," which is well established under federal law, states that "[i]f the total wage paid to each [employee] in this case during any given week is divided by the total time he worked that week, the resulting average hourly wage exceeds [the minimum wage required by the FLSA].  We believe this is all that is necessary to meet the requirements of 206(a)." *U. S. v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1961).  The Ninth Circuit follows the *Klinghoffer* rule.  *See Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999) (stating "The district court properly rejected any minimum wage claim the officers might have brought by finding that their salary, when averaged across their total time worked, still paid them above the minimum wage.").  Given the law on this, even if Plaintiffs and the Class could prove that they regularly worked significant hours off the clock (up to two hours a day), Plaintiffs and the Class still earned more than the minimum wage requirement

5

790734

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING FEDERAL CLAIMS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
Case No. 2:16-CV-09000 JAK (JEM)

1   of $7.25/hour given their hourly and session rates.  29 U.S. Code § 206.  Thus, as

2   noted above, Plaintiffs placed no value on such a claim when valuating and assessing

3   potential FLSA damages.

4   **C.     Under the FLSA, there are Other Legal Barriers to Off-the-Clock Claims**

5   **that Would Further Limit FLSA Liability.**

6          In addition to the issues set forth above regarding the overtime and minimum

7   wage claims, the FLSA also creates potential barriers to recovery for Plaintiffs'

8   theories of off-the-clock work and/or owed pay.  First, the Supreme Court's ruling in

9   the *Busk* case mitigates against a finding that Plaintiffs and Interpreters should be

10  compensated for waiting in security lines prior to entering the Courthouse or Detention

11  Centers.  *Integrity Staffing Sols., Inc. v. Busk*, 135 S.Ct. 513, 514, 190 L.Ed.2d 410

12  (2014) (holding that time spent by employees waiting for and undergoing security

13  screenings before leaving the workplace was not compensable time under the FLSA).

14  Second, even if an Interpreter can prove that he or she worked over 40 hours, the

15  FLSA arguably permits credits for guaranteed hours and for rounding systems that

16  always round in the employee's favor, which are present in this case, thus further

17  limiting Defendant's FLSA exposure.  *Wallace v. City of San Jose*, 2018 WL2197721

18  at *4 (N.D. Cal. May 14, 2018).[1]  These legal barriers further demonstrate that the

19  FLSA Settlement is appropriate and should be preliminarily approved.

20  / / /

21  / / /

22  / / /

23

24

25

26

---

27  [1] Since initiation of the Lawsuit, SOSI has also taken action to minimize some of the
    off-the-clock issues raised by Plaintiffs.  Specifically, SOSI has remedied issues with

28  waiting in security lines in such locations as Los Angeles as Interpreters may now
    bypass security with their badges.

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING FEDERAL CLAIMS IN SUPPORT**
**OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
Case No. 2:16-CV-09000 JAK (JEM)

**CONCLUSION**

In sum, during discovery it was evidenced that Plaintiffs' FLSA Claims were significantly limited and thus Plaintiffs appropriately valued those claims as described above and settled this matter to provide relief to those who affirmatively opt in to the conditionally certified collective action.  Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the Settlement in this matter.

Dated:  February 1, 2019          BEESON, TAYER & BODINE, APC


By:     /s/ Costa Kerestenzis
        COSTA KERESTENZIS
        LORRIE BRADLEY
        Attorneys for JO ANN GUTIERREZ-
        BEJAR, MARIA PORTILLO, and
        STEPHANY MAGAÑA

7

790734